RICHARD L HOLCOMB (HI Bar No. 9177)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com

ALAN BECK (HI Bar No. 9145)
Attorney at Law
4780 Governor Drive
San Diego, California 92122
Telephone: (619) 971-0414
Email: ngord2000@yahoo.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW NAMIKI ROBERTS, <br><br>                     Plaintiff, <br>     vs. <br><br> CITY AND COUNTY OF HONOLULU; and <br><br> JOHN DOES 1-50, <br><br>                     Defendants. | CASE No. 1:15-CV-00467 <br><br> VERIFIED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS |

## VERIFIED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS

COMES NOW the Plaintiff, ANDREW NAMIKI ROBERTS, by and through his undersigned counsel, and complain against Defendants CITY AND COUNTY OF HONOLULU and JOHN DOES 1-50 as follows:

## __INTRODUCTION__

1.      This is an action to vindicate Plaintiff's rights under the Second, Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the Constitution and laws of the State of Hawaii.

2.      Despite this Court's decision in *Steve Fotoudis v. City and County of Honolulu, et. al.*, 54 F.Supp.3d 1136 (D. Haw. 2014), the Honolulu Police Department (HPD) has adopted a verbal policy to treat permanent residents disparately by refusing to issue permanent residents permits to acquire firearms unless and until the permanent resident applicant personally obtains unspecified documents from their country of origin and/or consulate showing, to the satisfaction of the HPD, that the permanent resident applicant's criminal history would not preclude the permanent resident from keeping a firearm in his or her home for the purpose of self-defense.

3.      This new policy directly contradicts Haw. Rev. Stat. § 134-2(e):  "If the applicant is not a citizen of the United States and may be eligible to acquire a firearm under this chapter, *the issuing authority shall* perform an inquiry on the applicant, by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases, before any determination to issue a permit or to deny an application is made." (emphasis added).

4.      Nevertheless, representatives of the Honolulu Police Department ("HPD") have informed Mr. Roberts that because he is a permanent resident rather than a citizen, his background check was deemed by the HPD to be "incomplete" despite no evidence that Mr. Roberts had committed a crime or was otherwise unfit or disqualified from owning a firearm in his home for the purpose of self-defense. Not only was Mr. Roberts' application to acquire a handgun denied, the HPD even "revoked" Mr. Roberts' previously issued permit to acquire rifles and shotguns and seized Mr. Roberts' lawfully acquired shotgun.

5.      Defendants have violated Mr. Roberts' constitutional right to keep a firearm in his home for the purpose of self-defense.  Defendants have also unlawfully seized a firearm which Mr. Roberts legally owned and for which he had lawfully obtained a permit to acquire pursuant to Sections 134-2 of the Hawaiʻi Revised Statutes.   These actions have violated and continue to violate Mr. Roberts' constitutional rights under the Second, Fourth and Fourteenth Amendments of the United States constitution.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

7.    This Court has personal jurisdiction over Defendant City and County of Honolulu as it is a government entity, more specifically a municipal corporation incorporated under the laws of the State of Hawai'i, located in Hawai'i.

8.    Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

9.    Plaintiff Andrew Namiki Roberts is a permanent resident of the United States, who at all material times herein did reside in the County of Honolulu, Hawaii.

10.    Defendant City and County of Honolulu ("City") is a municipal corporation incorporated under the laws of the State of Hawaii. The Honolulu Police Department is a Division or Department of the City.   The City is ultimately responsible for the Honolulu Police Department and its actions, and therefore, must assume the risks incidental to the maintenance of these agencies and their employees.

11.    Mr. Roberts reserves the right to petition this Court to amend this Complaint to add such parties as their true identities and capacities are ascertained through discovery or otherwise.

## APPLICABLE STATE LAW

12.     Pursuant to Hawaii law, no person may acquire possession of a firearm without obtaining a permit to acquire from the Chief of Police.  Haw. Rev. Stat. § 134-2(a).

13.     Section 134-2 of the Hawaiʻi Revised Statutes contemplate two types of permits to acquire:  1) for rifles and shotguns; and 2) for handguns.  Rifle or shotgun permits allow the applicant to make subsequent purchases of rifles or shotguns for a one year period subsequent to the issuance of the permit.  In contrast, applicants must separately apply for each individual handgun and must also complete an additional safety course.

14.     Section 134-2(d) of the Hawaiʻi Revised Statutes prohibits the issuance of permits to allow non-citizen applicants to permanently possess firearms in their homes for the purpose of self-defense.  However, this Court has held that provision is unconstitutional.  *Fotoudis*, *supra*.

15.     Section 134-2(e) of the Hawaiʻi Revised Statutes states:

> The issuing authority shall perform an inquiry on an applicant who is a citizen of the United States by using the National Instant Criminal Background Check System before any determination to issue a permit or to deny an application is made. If the applicant is not a citizen of the United States and may be eligible to acquire a firearm under this chapter, the issuing authority shall perform an inquiry on the applicant, by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases, before any determination to issue a permit or to deny an application is made.

Haw. Rev. Stat. § 134-2 (West).

16.    Upon completion of the application requirements in Chapter 134, fit and qualified citizens of the United States are routinely issued permits to acquire firearms without having to provide any additional documentation from a country of origin or from any country to which they may have traveled or even lived.

17.    In addition to the requirement that applicants for handgun permits first complete a safety course, *see* Haw. Rev. Stat. § 134-2, Section 134-7 of the Hawaiʻi Revised Statutes identifies the following applicants as unfit or disqualified:

- Fugitives from justice;

- Persons charged with or convicted of a felony, a crime of violence, or any illegal sale of any drug;

- Persons who have been treated or counseled for drug or alcohol abuse, addiction or dependence;

- Persons who have been acquitted of a crime on the grounds of mental disease, disorder or defect;

- Persons who have been diagnosed as having a significant behavioral, emotional, or mental disorder as defined by the DSM-5 or for treatment of organic brain syndromes;[1]

- Certain persons under the age of 25 who have been adjudicated to have committed specified crimes; and

- Persons who have had restraining orders issued against them.

Haw. Rev. Stat. § 134-7.

18.    After issuance, permits to acquire may also be revoked by a judge or the issuing authority for "good cause".  Haw. Rev. Stat. § 134-13.  No definition of what constitutes "good cause" exists.  However, an arrest for a felony, crime of violence, or illegal sale of any drug results in automatic "impoundment" of the permit and the permit must be surrendered to the issuing authority.  Haw. Rev. Stat. § 134-2(e).

19.    Pursuant to Section 134-3 of the Hawai'i Revised Statutes, gun owners are additionally required to register firearms within five days of bringing the firearm to Hawai'i or within five days of the acquisition of the firearm in Hawai'i.

---

[1] Persons who have been treated for drug or alcohol abuse, suffered from a mental disease or defect, or having been diagnosed with a behavioral, emotional, or mental disorder or organic brain syndrome can theoretically subsequently obtain a permit if they are "medically documented" to no longer be adversely affected by the condition.  Haw. Rev. Stat. § 134-7(c).

20.    The permit to acquire and registration is necessary because it is a crime to possess a firearm and/or ammunition in Hawai'i without the permit contemplated by Section 134-2 or the registration contemplated by Section 134-3.  Haw. Rev. Stat. § 134-17.

### Mr. Roberts is fit and qualified to possess firearms for lawful purposes.

21.    Mr. Roberts is and was at all material times herein domiciled in Hawaii.  Mr. Roberts has no intention of leaving Hawaii.

22.    At all material times, Mr. Roberts was a lawfully admitted permanent resident of the United States.  Mr. Roberts possesses a Permanent Resident Card, commonly referred to as a "green card."  **Exhibit One**.

23.    Mr. Roberts is self-employed as a professional photographer in Hawai'i and his company also rents photo booths for events throughout Oahu.  Mr. Roberts pays city, state and federal taxes.

24.    Mr. Roberts wishes to acquire firearms, possess operational firearms and ammunition in his home for the purpose of self-defense, and to enjoy the use of said firearms for other lawful purposes in non-sensitive places.

25.    Mr. Roberts has never been charged with or convicted of any crime.

26.    Mr. Roberts is not a fugitive.

27.    Mr. Roberts has never been diagnosed with any mental illnesses, conditions, defects, nor received treatment for any organic brain syndrome.

28.    Mr. Roberts does not have and never had any temporary restraining order issued against him.

29.    Mr. Roberts has never committed domestic or any other act of violence.

30.    Mr. Roberts is not and has never been addicted to mind-altering substances and does not use illegal mind-altering substances.

31.    Mr. Roberts is not addicted to and does not drink alcohol in excess.

32.    Mr. Roberts has never received counseling or treatment for any abuse, addiction to, or dependence on any drug, mind-altering substance, or alcohol.

33.    On July 25, 2015, Mr. Roberts completed a firearms training course including at least four hours of classroom training and two hours of training at a firing range as required by Haw. Rev. Stat. § 134-2(g)(4).  The training was taught by an instructor who was certified by the National Rifle Association.  The training focused on the safe use, handling, and storage of firearms, firearms safety in the home, and Hawai'i state firearms laws.  **Exhibit Two**.

34.    Mr. Roberts is fit and qualified to possess a firearm pursuant to the laws of the United States and of Hawai'i.

35.    The only fact that, according to HPD, disqualifies Mr. Roberts is his inability to obtain documents that the HPD has unlawfully required pursuant to its new verbal policy.

**Mr. Roberts lawfully obtained a permit to acquire a rifle or shotgun.**

36.    On September 17, 2015, Mr. Roberts properly applied to acquire a rifle or shotgun at the HPD main police station. **Exhibit Three**. Mr. Roberts provided all information required of him and/or requested by the HPD. *See* **Exhibit Four** (HPD Application for a Firearm Permit instructions).

37.    Mr. Roberts identified his place of birth as Ashford, UK and provided his Permanent Resident Card, along with all other requested and required information.

38.    Upon information and belief, HPD as the issuing authority did conduct a background check on Mr. Roberts using the National Instant Criminal Background Check System, including a check of the Immigration and Customs Enforcement databases, as required by Section 134-2(e) of the Hawai'i Revised Statutes.   In fact, Mr. Roberts paid $14.75 as requested by the HPD for the Federal Bureau of Investigation fingerprint check. **Exhibit Five**; *See* Haw. Rev. Stat. § 134-2(i).

39.    The permit to acquire was issued. **Exhibit Three**. Mr. Roberts obtained that permit from the HPD on October 2, 2015. Pursuant to Section 134-2(e) of the Hawai'i Revised Statutes, that permit authorized Mr. Roberts to purchase shotguns and rifles for a period of one year after its issuance.

**Mr. Roberts lawfully and completely applied for a permit to acquire a pistol.**

40.    On October 5, 2015, Mr. Roberts properly applied for a permit to acquire a 9mm GLOCK 17 4.5" PI, Gen 4 handgun, for which he had paid $525 to Honolulu

Firearms and Range on September 17, 2015.  **Exhibit Seven**.  Mr. Roberts again supplied all of the required documents, including the affidavit pertaining to his firearms safety course.  *See* **Exhibit Two**.

41.    On October 19, 2015, at approximately 7:30 a.m., an officer at the Honolulu Police Department's Firearms Unit left a message on Mr. Roberts' voicemail stating that "starting recently" the HPD "needed a letter from [Mr. Roberts'] consulate clearing" Mr. Roberts in regards to his background in Ashford, UK.

42.    On October 19, 2015, Mr. Roberts returned to the HPD.  Mr. Roberts was informed that he would not receive a permit to acquire a handgun unless and until he provided a "clearance" from his consulate due to some recent "policy" of the HPD.

43.    The HPD representative refused to provide a written copy of any such policy.  The representative refused to inform Mr. Roberts of when this policy was instituted stating only that this became the policy "when the chief's office told" the Firearms Unit that the policy had changed.

44.    The representative informed Mr. Roberts that the HPD legal advisor and/or Corporation Counsel instituted the policy.

45.    The cited reason for the new policy was a supposed "loophole" where would-be permanent residents are permitted to obtain green cards despite having committed violent crimes or family offenses which would prevent them from

keeping and bearing arms.  Yet, the representative also described these additional documents that HPD was requiring Mr. Roberts to obtain as follows:  "[w]hen you applied to the INS, you got a security clearance … but you applied and they had a criminal history check from England.  It's the same criminal history check."

46.    Upon information and belief, HPD has performed the required background check on Mr. Roberts using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases.  Haw. Rev. Stat. § 134-2(e).

47.    No criminal history or any other conditions that would preclude Mr. Roberts from keeping firearms in his home for the purpose of self-defense have been identified by the HPD.

48.    No criminal history or any other conditions that would preclude Mr. Roberts from keeping firearms in his home for the purpose of self-defense exist.

49.    Mr. Roberts has not provided the requested clearance documents.  Mr. Roberts was told by his consulate's office that, in order to obtain documents from Ashford England, Mr. Roberts would have to travel to Ashford and make a specific written request with the police department in Ashford.

50.    Mr. Roberts has not been issued a permit to acquire a handgun despite the passage of more than twenty days.  *See* Haw. Rev. Stat. § 134-2(e) ("a permit shall

be issued or the application denied before the twentieth day from the date of the application.").

51.    Mr. Roberts' application has been effectively denied based solely on Mr. Roberts having declined to provide the additional clearance documents.

52.    Had Mr. Roberts' place of birth been the United States of America, Mr. Roberts permit would be issued.

53.    Fit and qualified United States citizens who were born in the United States are not required to provide any "clearance" documents or any documents from any foreign country in which they may have travelled or even lived when applying for a permit to acquire or before a permit is issued.

## The HPD unlawfully seized Mr. Roberts' shotgun.

54.    Pursuant to the rifle and shotgun permit Mr. Roberts had already lawfully obtained from the HPD, **Exhibit Three**, Mr. Roberts legally purchased a Pardner Pump shotgun, serial number NZ620768, from Sports Authority on October 25, 2015.  **Exhibit Six**.  Mr. Roberts paid $217.77 for the shotgun.  **Exhibit Six**.

55.    On October 26, 2015, Mr. Roberts took the shotgun to the HPD to have the shotgun registered pursuant to Section 134-3(b) of the Hawai'i Revised Statutes.

56.    At the police station, Mr. Roberts was informed that his permit was being "revoked" because the background check was incomplete.   The HPD representative told Mr. Roberts that "the permit should not have been issued."

57.   The HPD representative admitted that Mr. Roberts had committed no crime.

58.   The sole reason for the HPD's "revocation" and belief that the permit should not have been issued was the background check.  The HPD representative told Mr. Roberts:

> What I am saying to you is, in order to acquire, the permit to acquire a firearm, this background check has to be conducted.  In the *Fotoudis* case, he provided all of those documents from his country of origin, which fulfilled the background check.  We do not have those documents for you.  So, that firearm permit that you received for your long gun should not have been issued.  So that kind of goes on our part.  So we are revoking that permit and we will hold on to your gun.

59.   The HPD representative insisted that Mr. Roberts could not "legally possess" the shotgun based solely on the fact that Mr. Roberts did not obtain some "clearance" from his consulate, and despite the lack of any evidence that Mr. Roberts was unfit or disqualified.  The HPD representative further stated:

> Our interpretation of the law is that prior to issuing a permit to acquire, for you to legally acquire a firearm, which you cannot legally acquire a firearm without that permit in the state of Hawaii, we need to do a background check.  A background check was not completed on you because you don't have the documents from your country of origin.  This has nothing to do with your citizenship status, this has to do with whether we have completed a complete background check on you.  We have not so that permit should not have been issued.  So therefore, we are revoking that permit and we are holding on to your weapon until that [unintelligible] is resolved.

60.   Permits issued to United States Citizens who were born in the United States are not revoked for failure to provide any "clearance" documents or any documents from any foreign country in which they may have travelled or even lived.

61.  The HPD refused to register Mr. Roberts' shotgun pursuant to Section 134-3 of the Hawai'i Revised Statutes.

62.  The HPD does not refuse to register firearms that are lawfully acquired by United States Citizens who were born in the United States because those citizens fail to provide "clearance" documents or any documents from any foreign country in which they may have travelled or even lived.

63.  On October 26, 2015, Mr. Roberts' shotgun was seized by the HPD without Mr. Roberts' consent and over Mr. Roberts' objection.  Mr. Roberts was issued a receipt for his seized shotgun.  **Exhibit Eight**.

64.  Absent some disqualifying event such as a criminal charge or medical diagnosis, Defendant does not seize lawfully acquired firearms from United States Citizens who were born in the United States and who have been issued permits to acquire.  Those citizens are not required to provide any "clearance" documents or any documents from any foreign country in which they may have travelled or even lived in the first place.

65.  Despite the HPD representative's assurance that the HPD "legal advisor" was to return to work that week, the shotgun has not been returned to Mr. Roberts and Mr. Roberts has been offered no compensation for the seized shotgun.

66.  On October 27, 2015, Mr. Roberts visited Immigration Services. Immigration Services informed Mr. Roberts that the "National Instant Criminal

Background Check System, to include a check of the Immigration and Customs Enforcement databases" which is believed to have been conducted by the HPD as required by statute, would include any and all arrests and convictions from the country of origin including violent misdemeanors or family offenses.

67.    On October 27, 2015, Mr. Roberts returned to the police station and spoke with a Captain.  The Captain informed Mr. Roberts that he was not aware of any legal reason why Mr. Roberts could not keep a firearm but that there was some "disconnect between federal and state law" and until "the chief [and/or the legal department] makes a decision," Mr. Roberts' shotgun would not be returned.

68.    The Captain also confirmed that HPD did have in its possession Mr. Roberts' background check, including the Immigration and Customs Enforcement database check.

### Mr. Roberts received a "cancellation" letter.

69.    On November 5, 2015, Mr. Roberts received a letter (dated November 3, 2015) stating that "under the provisions the Hawaii Revised Statutes (HRS), Section 134-2 [Mr. Roberts'] application for a permit to acquire a firearm is being cancelled." **Exhibit Nine**.

70.    The reason stated for this "cancellation" is that Mr. Roberts was "unable to provide proper documentation of [his] criminal history in [his] country of origin; therefore [his] firearms permit was cancelled." **Exhibit Nine**.

71.   Further, the letter states that Mr. Roberts "may reapply for a firearms permit when [and presumably only when he] obtain[s] the required documentation." **Exhibit Nine**.

72.   The "required documentation" remains undefined.

## FIRST CAUSE OF ACTION

### Violation of Second Amendment

73.   Paragraphs 1 through 72 are incorporated as though fully stated herein.

74.   Mr. Roberts has the constitutional right to keep and possess firearms in his home for the purpose of self-defense.

75.   Mr. Roberts has the constitutional right to keep and possess firearms in other non-sensitive places for protected and lawful purposes such as sport-shooting, training, and hunting.  Mr. Roberts' right to keep and possess firearms in his home for the purposes of self-defense is the core right protected by the Second Amendment to the United States Constitution.

76.   Obtaining a permit from the HPD is the sole means by which Mr. Roberts could lawfully keep and possess a firearm in the City and County of Honolulu.

77.   Defendant violated Mr. Roberts' right to keep and possess firearms by denying his permit to acquire a handgun despite no evidence that Mr. Roberts was unfit or disqualified from doing so.

78.    Defendant violated Mr. Roberts' right to keep and possess firearms by revoking Mr. Roberts' lawfully obtained permit to acquire a rifle or shotgun and/or refusing to register the lawfully obtained shotgun.

79.    Defendant violated Mr. Roberts' right to keep and possess firearms by seizing Mr. Roberts' lawfully acquired shotgun.

80.    Mr. Roberts has been injured by Defendants' conduct and stands to suffer further injury should the conduct continue.

81.    The current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

### Violation of Equal Protection of the Law

82.    Paragraphs 1 through 72 are incorporated as though fully stated herein.

83.    Defendant as the "issuing authority" is required to conduct a background check for all applicants pursuant to Haw. Rev. Stat. § 134-2(e).

84.    Pursuant to some "policy" Defendant is requiring legal permanent residents of the United States, including Mr. Roberts, to obtain (at the permanent residents' own expense and regardless of the burden of doing so) some "clearance" from the consulate of the country where the permanent resident was born.

85.    Upon information and belief, this policy is being applied to any and all permanent residents regardless of what age the permanent resident was when they

immigrated to the United States and/or how long the permanent resident has been in the United States or even Hawaiʻi.

86.     Defendant has no statutory authority to require legal permanent residents to conduct their own background checks, obtain additional information, and/or provide "clearances" from the consulate of their country of origin.

87.     Defendant does not require United States citizens who were born in the United States to provide any such "clearance" documentation, irrespective of where the citizen may have travelled or even lived, before permits to acquire are issued.

88.     Defendant does not require United States citizens who were born in the United States to provide any such "clearance" documentation, irrespective of where the citizen may have travelled or even lived before lawfully obtained firearms are registered.

89.     Defendant does not revoke otherwise lawfully obtained permits to acquire which were issued to United States citizens who were born in the United States because those citizens failed to provide any such "clearance" documentation, irrespective of where the citizen may have travelled or even lived.

90.     Defendant does not seize firearms acquired pursuant to permits to acquire firearms issued to United States citizens who were born in the United States

because those citizens failed to provide any such "clearance" documentation, irrespective of where the citizen may have travelled or even lived.

91.   Defendant's policy is not facially neutral.  Instead, it applies only to legal permanent residents and perhaps others who were not born in the United States.

92.   Defendant's refusal to issue Mr. Roberts a permit to acquire a handgun unless and until he produced "clearance" documentation from his country of origin and/or his consulate is an unconstitutional denial of equal protection of the laws and is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

93.   Defendant's "revocation" or "cancellation" of Mr. Roberts' lawfully obtained permit to acquire a rifle or shotgun because Mr. Roberts had not produced "clearance" documentation from his country of origin and/or his consulate even after the permit was already issued is an unconstitutional denial of equal protection of the laws and is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

94.   Defendant's refusal to register Mr. Roberts' lawfully obtained shotgun because Mr. Roberts had not produced "clearance" documentation from his country of origin and/or his consulate even after the permit to acquire was already issued is an unconstitutional denial of equal protection of the laws and is in

violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

95.    Defendant's seizure of Mr. Roberts' lawfully acquired shotgun because Mr. Roberts had not produced "clearance" documentation from his country of origin and/or his consulate even after the permit to acquire was already issued is an unconstitutional denial of equal protection of the laws and is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

96.    Defendants' refusal to allow Mr. Roberts to reapply only when he obtains the required paperwork is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

97.    Defendants' "policy" is an unconstitutional denial of equal protection of the laws and is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

98.    Mr. Roberts has been injured by Defendants' conduct and stands to suffer further injury should the conduct continue.

99.    The current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## <u>THIRD CAUSE OF ACTION</u>

### Due Process Violation

100.   Paragraphs 1 through 72 are incorporated as though fully stated herein.

101.   Defendant purported to "revoke" or "cancel" Mr. Roberts' permit to acquire a shotgun or rifle without good cause

102.   Defendant purported to revoke or cancel Mr. Roberts' permit to acquire a rifle or shotgun without any evidence that Mr. Roberts was unfit or unqualified to acquire rifles or shotguns.

95.   Defendant purported to revoke or cancel Mr. Roberts' permit to acquire a rifle or shotgun without providing Mr. Roberts with notice or any meaningful opportunity to be heard.

103.   Mr. Roberts was not permitted to register his lawfully obtained shotgun pursuant to Section 134-3 of the Hawai'i Revised Statutes.

104.   Mr. Roberts' shotgun was seized without Mr. Roberts' consent and without notice or any meaningful opportunity to be heard.

105.   Mr. Roberts was provided no pre-deprivation hearing and no post-deprivation hearing to determine whether the property was wrongfully seized and/or if the property should be returned or any other issues surrounding the seizure.  No such hearing is afforded by the applicable statutes.

106. Insofar as Sections 134-2 and/or 134-3 of the Hawaii Revised Statutes and ancillary provisions could be interpreted to provide minimal due process protections, those provisions were not applied to Mr. Roberts.

107. Pursuant to the HPD policy, Mr. Roberts rather than the issuing authority, *i.e.*, Defendant, was required to complete his own background check.

108. Mr. Roberts' application for a permit to acquire a handgun was denied or was not properly processed by Defendant pursuant to a policy that Defendant is not even statutorily entitled to adopt.

109. Mr. Roberts' application for a permit to acquire a handgun was denied or not properly processed by Defendant solely because Mr. Roberts failed to produce unspecified "clearance" documentation from the British consulate or from England without regard to whether the British consulate or England could provide such a "clearance" and/or under what circumstances the consulate or England might agree or refuse to do so.

110. According to Defendant's letter, Mr. Roberts may not even reapply unless and until he obtains the "required documentation." **Exhibit Nine**.

111. No opportunity for administrative or judicial review of any of the Defendant's pertinent omissions, decisions or its policy, discriminatory or otherwise, is provided by law.

112.   Defendant's policy, omissions and actions constitute a violation of minimal due process protections as guaranteed Mr. Roberts by the Fourteenth Amendment.

113.   Mr. Roberts has been injured by Defendants' conduct and stands to suffer further injury should the conduct continue.

114.   The current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

### Violation of Fourth Amendment

115.   Paragraphs 1 through 72 are incorporated as though fully stated herein.

116.   Mr. Roberts' lawfully obtained Pardner Pump shotgun was seized without Mr. Roberts' consent.

117.   Mr. Roberts had committed no crime and no other disqualifying event had occurred.

118.   Defendant had neither probable cause justifying nor a warrant authorizing the seizure of Mr. Roberts' property.

119.   Defendant meaningfully interfered with Mr. Roberts' property.   This meaningful interference violated Mr. Roberts' right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States constitution.

120.   Mr. Roberts has been injured by Defendants' conduct and stands to suffer further injury should the conduct continue and/or the shotgun is not returned.

121.   The current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION

### Conversion

122.   Paragraphs 1 through 72 are incorporated as though fully stated herein.

123.   Mr. Roberts had lawfully obtained a permit and was therefore entitled to purchase rifles or shotguns for a period of one year.

124.   Pursuant to this permit, Mr. Roberts lawfully purchased the Pardner Pump shotgun on October 25, 2015 as alleged above.

125.   On October 26, 2015, Defendant purported to orally "revoke" the permit to acquire despite a lack of good cause or any evidence that Mr. Roberts was not a fit or qualified permittee.

126.   On October 26, 2015, Defendant seized the shotgun over Mr. Roberts' protest.

127.   There is no statutory requirement that Mr. Roberts maintain a permit or otherwise renew his permit to acquire in order to continue to possess the shotgun.

128.   The shotgun has not been returned.

129.  This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## SIXTH CAUSE OF ACTION

### Replevin

130.  Paragraphs 1 through 72 are incorporated as though fully stated herein.

131.  Mr. Roberts is entitled to immediate possession of the Pardner Pump shotgun.

131.  The shotgun is particularly described as a MP12S8 Pardner Pump, with the Serial Number NZ260768.  *See* **Exhibit Six**.

132.  The actual value of the shotgun is $179.99.  **Exhibit Six**.

133.  The property was not taken for a tax, assessment, or fine pursuant to any statute, and was not seized as an execution or attachment against the plaintiff or the plaintiff's property.

134.  The property is in the possession of the named Defendant, the City and County of Honolulu and specifically the HPD.  **Exhibit Eight**. Mr. Roberts lawfully obtained a permit to acquire the shotgun.  **Exhibit Three**.  Pursuant to the permit, Mr. Roberts purchased the shotgun from Sports Authority on October 25, 2016.  **Exhibit Six**.  On October 26, 2015, Mr. Roberts brought the shotgun to the Alapai police station to have it registered pursuant to Haw. Rev. Statute § 134-3. HPD unlawfully revoked or cancelled the permit after its issuance, because Mr.

Roberts failed to provide an unspecified "clearance" or "proper documentation of [his] criminal history in [his] country of origin," documents which are not required of United States citizens. **Exhibit Nine**. Because the permit to acquire was purportedly "revoked", the shotgun was unlawfully seized on October 26, 2015 by the Honolulu Police Department, **Exhibit Eight**, and remains in its possession.

135. Other than Mr. Roberts and Defendant, no other person has, claims, or might have or claim any interest in the property.

136. Mr. Roberts is entitled to secure immediate possession of his personal property, to wit: the Pardner Pump shotgun.

137. Insofar as Mr. Roberts seeks relief pursuant to Haw. Rev. Stat. § 654-1, Mr. Roberts will execute the bond required by § 654-2.

138. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## ON ALL COUNTS

139. Paragraphs 1 through 72 are incorporated as though fully stated herein.

140. A controversy exists as to whether the HPD may treat legal permanent residents disparately in issuing and/or revoking permits to acquire firearms. Specifically, before issuing a permit to require pursuant to Section 134-2, may Defendant require legal permanent residents to obtain unspecified additional

documents from their consulates and/or countries of origin that Defendants do not require of citizens born in the United States?

141.   A declaration from this Court would settle this issue.

142.   A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

143.   The Plaintiff seeks a declaration that the HPD may not require permanent residents to obtain additional "clearance" documents from their consulates or countries of origin that are not required of citizen applicants who were born in the United States.

144.   Should Defendant decline to agree to voluntary cessation of the policy and/or its application to Mr. Roberts, Mr. Roberts intends to apply for injunctive and/or equitable relief.   Otherwise, HPD's new policy would continue to be enforced and would prevent legal permanent residents, including Mr. Roberts, from successfully obtaining a permit allowing them to acquire firearms in Hawaiʻi. Thus, fit and qualified permanent residents would be denied their constitutional right to lawfully possess the firearm(s) and ammunition for defense of hearth and home or in other non-sensitive places for protected purposes.   Only those legal permanent residents who could and did produce unspecified "clearances" from the consulate of the country where they were born to the satisfaction of the HPD

would be eligible for permits to acquire.  The willingness and circumstances under which such consulates would issue such "clearances" are certain to vary.

145.   Mr. Roberts will continue to suffer irreparable injury if Defendant does not voluntarily comply or this Court does not issue an injunction.

146.   Absent voluntary compliance, there is no adequate remedy at law because only an injunction would allow Mr. Roberts to obtain a permit (or have his permit to acquire a rifle or shotgun reinstated) allowing him to possess a firearm and ammunition for defense of hearth and home or in other non-sensitive places for protected purposes unless he were able to somehow produce unspecified documents to satisfy Defendant and/or its policy.  Only an injunction and/or equitable relief pursuant to state law would result in the return of Mr. Roberts' shotgun.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.    Enter a declaratory judgment finding that the HPD policy that requires lawfully admitted permanent resident aliens to obtain, in addition to the documents that are required of citizens born in the United States,  is null and void because it (a) infringes on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution; and (b)

violates equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution;

2.     If (and only if) Defendant does not agree to do so, issue preliminary and permanent injunctions enjoining Defendant and its political subdivisions, officers, agents, and employees from enforcing the policy which operates to restrain legal permanent resident aliens from exercising Second Amendment rights and based upon their place of birth;

3.     If (and only if) Defendant does not agree to do so and in the absence of Defendant's ability to show that Mr. Roberts is unfit or disqualified to enjoy the relief requested, issue preliminary and permanent injunctions compelling Defendants and their political subdivisions, officers, agents, and employees, , to: (a) to re-instate Mr. Roberts' lawfully issued permit to acquire shotguns or rifles; (b) to permit Mr. Roberts to lawfully register his shotgun pursuant to Section 134-3; and (c) to immediately return the seized shotgun to Mr. Roberts; (d) to promptly and meaningfully evaluate, with no more or less scrutiny than would be applied to a citizen applicant and without requiring Mr. Roberts to provide any more information or documentation than that which is required of citizen applicants, Mr. Roberts' application to acquire the 9mm Glock handgun and background to determine his fitness and qualifications to lawfully keep firearms; and, (e) insofar as Mr. Roberts is fit and qualified to keep firearms, to immediately thereafter issue

to Mr. Roberts the permit contemplated by Section 134-2, vesting Mr. Roberts with the same rights and privileges to acquire, keep and possess that handgun as those of United States citizens who obtain a permit pursuant to Section 134-2.

4.     If (and only if) Defendant refuses to voluntarily return Mr. Roberts' shotgun, to order the immediate return of Mr. Roberts' shotgun to Mr. Roberts pursuant to Chapter 654 of the Hawai'i Revised Statutes and/or any applicable commonlaw doctrine of replevin.

5.     Nominal Damages.

6.     Grant such other and further relief against any or all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

7.     Award attorneys' fees, statutory fees and costs pursuant to 42 U.S.C. § 1988 or as otherwise permitted by law.

DATED: Honolulu, HI; November 6, 2015.

Respectfully submitted,

_s/Richard L. Holcomb_
Richard Holcomb
Attorney for Plaintiff