# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANDREW NAMIKI ROBERTS, | ) | CASE NO. 1:14-cv-00333 JMS-RLP |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | CASE No. 1:15-cv-00467 ACK RLP |
| CITY AND COUNTY OF HONOLULU; and | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF ATTORNEY FEES, TAXABLE COSTS, AND/OR NON-TAXABLE EXPENSES** |
| JOHN DOES 1-50, in their individual or official capacities. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, TAXABLE COSTS AND/OR NON-TAXABLE EXPENSES

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**A.  Statement of Facts and Procedural History** . . . . . . . . . . . . . . . . . 1

**B.  Plaintiff is the prevailing party.** . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**C.  The Lodestar Method justifies the requested fee.** . . . . . . . . . . . . . 9

**D.  This Court should award a fair hourly rate.** . . . . . . . . . . . . . . . . . 12

**E.  Counsel deserves a raise.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**F.  The Johnson/Kerr factors supports the requested rate.** . . . . . . . . 26

      a.   The novelty and difficulty of the questions involved. . . . . . . . . 27

      b.  Whether the fee is fixed or contingent. . . . . . . . . . . . . . . . . . . . 27

      c.  Experience of counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      d.  Undesirability of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**G.  Costs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**H.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Reported Cases</u>

*Anderson v.  Director, Office Worker's Compensation Programs*,
91 F.3d 1322 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Barrios v. California Interscholastic Fed'n*,
277 F.3d 1128 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Blum v. Stenson*, 465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . .  21

*Buckhannon Bd. & Care Home, Inc. v.*
*W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) . . . . . . . . 7

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) . . . . . . . . . . . . . . . .  9

*District  of  Columbia  v.  Heller*, 554 U.S.  57 (2008) . . . . . . . . . . . . 27

*Farrar v. Hobby*, 506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Ferland v. Conrad Credit* Corp., 244 F.3d 1145 (9th Cir. 2001) . . . . .  9

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) . . . . . . . . . . . . . . . . .29

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . .7, 9

*Interfaith Community Organization v. Honeywell International, Inc.*,
426 F.3d 694 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir. 1987) . . . . . . .  12

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) . . . . . .  26

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) . . . . . . . . . . . . . . 27

*McGinnis v. Kentucky Fried Chicken of Cal.*,
51 F.3d 805 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Prison Legal News v. Schwartznegger*,
608 F.3d 446 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Quesada v. Thomason*, 850 F .2d 537 (9th Cir. 1988) . . . . . . . . . . . . 26

*Robinson v. Plourde*, 717 F.Supp.2d 1092 (D. Haw. 2010) . . . . . . . . 15

*Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782 (1989) . . . . . . . . 9

*World Triathalon Corp. v. Dunbar*,
539 F. Supp. 2d 1270 (D. Haw. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Unreported Cases and Dispositions**

*Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*,
07-00007 DAEKSC,
2007 WL 2320672 (D. Haw. Aug. 10, 2007) . . . . . . . . . . . . . . . . . . .   14

*Angel v. Capital Research Grp., Inc.*,
CIV 10-00364 HG/KSC,
2012 wl 2563168 (D. Haw. June 28, 2012) . . . . . . . . . . . . . . . . . . . . . 17

*Au v. The Funding Group, Inc.,* No. CV 11–00541 SOM–KSC,
2013 WL 1187919 (D.Haw. Mar. 21, 2013) . . . . . . . . . . . . . . . . . . . . 18, 26

*B.T. ex rel. M.T. v. Dep't of Educ., Hawai'i*,
CIV. 10-00754 JMS, 2011 WL 3021129 (D. Haw. June 27, 2011) . . . 18

*Blake v. Nishimura*, CIV 08-00281 LEK,
2010 wl 13724920 (D. Haw. Mar. 31, 2010) . . . . . . . . . . . . . . . . . . . . 14, 18

*C.Y. ex rel. Cheryl Y. v. Dep't of Educ., Hawai'i*,
CIV. 11-00335 JMS, 2011 WL 7102572 (D. Haw. Dec. 29, 2011) . . . 18

*De-Occupy Honolulu, et. al. v. City and County of Honolulu*,
No. 1:12-cv-00668 JMS-KSC,
2015 wl 1013834 (D. Haw. March 9, 2015) . . . . . . . . . . . . . . . . . . . . 25

*Dep't of Educ. Hawai''i v. C.B. ex rel. Donna B.*,
CIV. 11-00576 SOM, 2012 WL 7475406 (D. Haw. Sept. 28, 2012) . . 16, 17, 19, 20

*Donkerbrook v. Title Guar. Escrow Servs., Inc.*,
Civ No. 10–00616 LEK–RLP,
2011 WL 3649539 (D. Haw. Aug.18, 2011) . . . . . . . . . . . . . . . . . . . 30

*Harris v. Trash Man, LLC*, CIV. 12-00169 HG-KSC,
2013 WL 1932715 (D. Haw. Apr. 16, 2013) . . . . . . . . . . . . . . . . . . . 13, 14, 20

*Hawaii Defense Found. v. City and County of Honolulu*,
No. 12-CV-00469 JMS-RLP,
2014 wl 2804448 (D. Haw. June 16, 2014) . . . . . . . . . . . . . . . . . . . 11, 25

*Hawaii Disability Rights Center, et. al. v. State of Hawaii*,
Civ. No. 03-00524 HG-KSC (D. Haw. 2005) . . . . . . . . . . . . . . . . . . 24

*I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*,
CIV. 11-00676 LEK, 2012 WL 6969333 (D. Haw. Nov. 30, 2012) . . . 16, 18, 25

*James v. City and County of Honolulu*,
1:13-cv-00397 JMS-BMK (D. Haw. Feb. 3, 2015) . . . . . . . . . . . . . . . 25

*Nat'l Comm'n for Certification of Crane Operators v. Ventula*,
CIV.09-00104SOM-LEK,
2010 WL 2179505 (D. Haw. Apr. 30, 2010) . . . . . . . . . . . . . . . . . . . 13, 16

*Olson v. Lui*, CIV. 10-00691 ACK,
2012 WL 3686682 (D. Haw. Aug. 27, 2012) . . . . . . . . . . . . . . . . . . . 14

*Onishi v. Redline Recovery Servs., LLC*,
CIV. 10-00259, 2010 WL 5128723 (D. Haw. Nov. 12, 2010) . . . . . . . 13

*Sam K. v. Dep't of Educ., Hawaii*, CV 12-00355 ACK-BMK,
2013 WL 1856069 (D. Haw. Apr. 30, 2013) . . . . . . . . . . . . . . . . . . . 16

*Sound v. Koller*, CV 09-00409 JMS-KSC,
2010 WL 1992198 (D. Haw. Mar. 5, 2010) . . . . . . . . . . . . . . . . . . . 17

*Trendex Fabrics, Ltd. v. Chad Jung Kim*,
CIV. 13-00253-LEK, 2013 WL 5947027 (D. Haw. Nov. 5, 2013) . . .  15, 18

*Trustees of PAMCAH-UA Local 675 Trust Funds v.*
*Am. Indus. Insulation, LLC*, CIV. 10-00412 JMS,
2012 WL 2685083 (D. Haw. June 15, 2012) . . . . . . . . . . . . . . . . . . .  19

*Trustees of the PAMCAH-UA Local 675 Trust Funds v.*
*Drain-N-Rooter Plumbing, Inc.*, CIV. 11-00565 SOM,
2012 WL 1409656 (D. Haw. Apr. 3, 2012) . . . . . . . . . . . . . . . . . . . . 19

*Trustees of PAMCAH-UA Local 675 Trust Funds ex rel. Chun v.*
*Ekahi Fire Prot., LLC*, CV 13-00100-HG-RLP,
2013 WL 2897794 (D. Haw. June 12, 2013) . . . . . . . . . . . . . . . . . . . 19

*Tylor v. Smart Enter., Inc.*, CIV. 13-00289 HG-RLP,
2013 WL 6843056 (D. Haw. Dec. 26, 2013) . . . . . . . . . . . . . . . . . . . 19

*Wereb v. Cnty. Of Maui*, CIV. 09-00198 JMS-LE,
2010 wl 431976 (D. Haw. Feb. 4, 2010) . . . . . . . . . . . . . . . . . . . . . 13, 20

*Yamada v. Weaver*, CIV. 10-00497 JMS,
2012 WL 6019363 (D. Haw. Aug. 30, 2012) . . . . . . . . . . . . . . . . . . .  14

## **Statutes, Rules, and Other Authorities**

28 U.S.C. § 1914 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 28

Fed. R. Civ. P., Rule 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Fed. R. Civ. P., Rule 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

United States District Court for the District of Hawaiʻi
Local Rules, Rule 7.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

## INTRODUCTION

Mr. Roberts has settled all legal issues with Defendants in the instant matter. The terms of the settlement stipulate that he is entitled to file for attorney's fees with this Court.  **Exh. "A"** ¶ 7 (Settlement Agreement).  As shown below, Mr. Roberts has prevailed completely in this matter. For the reasons below Mr. Roberts should be awarded the fees and costs requested.

### A.  Statement of Facts and Procedural History

In *Steve Fotoudis v.  City and County of Honolulu, et.  al.,* 54 F.Supp.3d 1136 (D.  Haw.  2014) this Court enjoined Haw. Rev. Stat. § 134-2(d) insofar as it prohibits permanent residents from applying for firearm permits.[1]  Nevertheless, the City adopted, in direct contravention of Haw. Rev. Stat. § 134-2(e), an unconstitutional "verbal policy" requiring lawful permanent residents to obtain an unspecified "clearance" from their native country in order to own a firearm.  [Docs. 1 ¶¶ 2-3, 42-44; 10 ¶ 3] Indeed, the HPD representative told Mr. Roberts that this new and obviously unlawful policy originated from the Department of Corporation Counsel.  [Docs. 1 ¶ 44; 10 ¶ 25]

Mr. Roberts is a lawfully admitted permanent resident alien who has resided in Hawaii for the past nine years and wishes to own firearms.  [Docs. 1 ¶ 24; 1-2; 10 ¶ 8]  Mr. Roberts is fit and qualified to own a firearm.  [Docs.  1 ¶¶ 25-32; 10 ¶ 5]

---

[1] Attorneys Holcomb and Beck also represented the Plaintiff in that case.

On September 17, 2015, Mr. Roberts properly applied to acquire a rifle or shotgun at the HPD main police station. [Docs. 1 ¶ 36; 1-5; 10 ¶ 17]  Mr. Roberts provided all information required of him and/or requested by the HPD.  [Docs. 1 ¶¶ 36-37; 10 ¶¶ 17-18]   HPD conducted a background check on Mr. Roberts using the National Instant Criminal Background Check System, including a check of the Immigration and Customs Enforcement databases, as required by Haw. Rev. Stat. § 134-2(e).  [Docs. 1 ¶ 38; 10 ¶ 19]  Mr. Roberts paid $14.75 as requested by the HPD for the Federal Bureau of Investigation fingerprint check. [Docs. 1-5; 10 ¶ 19]  The permit to acquire shotguns and rifles was issued, permitting Mr. Roberts to purchase shotguns and rifles for one year.  [Docs. 1-6; 10 ¶ 20]; Haw. Rev. Stat. § 134-2(e).

On October 5, 2015, Mr. Roberts properly applied for a permit to acquire a handgun, for which he had paid.  [Docs. 1-8; 10 ¶ 21]  Mr. Roberts again supplied all of the required documents.  *Id.*

On October 19, 2015, an HPD officer left a message on Mr. Roberts' voicemail stating that "starting recently" the HPD "needed a letter from [Mr. Roberts'] consulate clearing" Mr. Roberts in regards to his background in Ashford, UK.  [Docs. 1 ¶ 41; 10 ¶ 22]  At the police station, Mr. Roberts was again informed that he would not receive a permit to acquire a handgun unless and until he provided a "clearance" from his consulate due to some recent "policy" of the HPD.  [Docs. 1 ¶ 42; 10 ¶ 23]  The cited reason for the new policy was a supposed "loophole" where

2

would-be permanent residents are permitted to obtain green cards despite having committed violent crimes or family offenses.  [Docs. 1 ¶ 45; 10 ¶ 26]  Mr. Roberts was unable to provide the requested clearance documents because theconsulate's office informed Mr. Roberts that he would have to travel to Ashford and make a specific in-person request with the police department in Ashford.   [*See* Docs. 1 ¶ 49; 10 ¶ 28]  This would have proven financially impossible.

Pursuant to the rifle and shotgun permit Mr. Roberts had already lawfully obtained, Mr. Roberts purchased a shotgun.  [Docs. 1-8; 10 ¶ 30]   On October 26, 2015, Mr. Roberts took the shotgun to the HPD to have the shotgun registered pursuant to Haw. Rev. Stat. § 134-3(b). [Docs. 1 ¶ 55; 10 ¶ 31]  At the police station, Mr. Roberts was informed that his permit to acquire rifles and shotguns was being "revoked" because the background check was incomplete. [Docs. 1 ¶56; 10 ¶ 32]  A HPD representative told Mr. Roberts that "the permit should not have been issued." *Id.* The sole reason for the HPD's "revocation" and belief that the permit should not have been issued was that no "clearance" had been provided from the British consulate.  [Docs. 1 ¶ 58; 10 ¶ 31]   With neither a warrant nor consent, the HPD seized Mr. Roberts' shotgun.  [Docs. 1 ¶ 63; 10 ¶ 31]

On November 5, 2015, Mr.  Roberts received a letter (dated November 3, 2015) stating that "under the provisions the  Hawaii  Revised  Statutes  (HRS),

Section 134-2 [Mr. Roberts'] application for a permit to acquire a firearm is being cancelled." [Docs. 1-11 ¶ 56; 10 ¶ 40][2]

On November 6, 2015, Mr. Roberts filed this complaint. [Doc. 1] The City, via Deputy Corporation Counsel, Amanda Furman, was served on November 9, 2015. [Doc. 9]   Mr. Roberts and his counsel sought to resolve this matter without any further litigation.   Accompanying service, Defendants were provided a demand letter requesting the City discuss settlement by Nov. 13, 2015. **Exh. "C"**, Demand Letter.  The City was specifically informed that Mr. Roberts would begin drafting a motion for preliminary injunction (a motion that *could have been filed contemporaneously with the Complaint but was not drafted in an effort to minimize fees and costs*) if Mr. Roberts received no communication from the City.  *Id*. The City did not respond, despite counsel having contacted Corporation Counsel on several occasions in an effort to at least ascertain which deputy was assigned to the case.  Holcomb Decl.  Accordingly, counsel did begin drafting the motion for a preliminary injunction.  Beck Decl.

_____

[2] Immediately following the filing of his Complaint, Mr. Roberts received two additional letters, both dated November 3, 2015. **Exh. "B"**.  The first state that Mr. Roberts' permit to acquire shotguns and rifles was being revoked because it "was issued in error" due to Mr. Roberts' inability "to provide proper documentation of [his] criminal history in [his] country of origin."  The second informed Mr. Roberts that his unlawfully seized shotgun was being held at the HPD evidence room.  The same "inability" to produce "proper documentation" was also cited as the reason for the seizure.  *Id*.

On November 24, 2015, Mr. Roberts sent another letter to the City, increasing his demand due to further accrual of attorneys' fees and, again, requesting some communication from the City and participation in a Rule 26(f) conference. **Exh. "D"**. Defendants finally contacted Mr. Roberts and agreed to a conference pursuant to Rule 26(f) of the F.R.C.P. Holcomb Decl. At this point, Mr. Roberts suspended his drafting of the aforementioned preliminary injunction in the hopes that settlement could be achieved. Beck Decl.

On December 4, 2015, the parties' counsel met and the City tentatively agreed to settle with Mr. Roberts. Holcomb Decl. Counsel provided the City with a proposed Settlement Agreement on December 7, 2015. *Id.* However, after extended negotiations on December 14, 2015, the City did not wish to pay a reasonable attorneys' fee. *Id.* Counsel e-mailed another proposed settlement agreement that had been revised (pursuant to the December 14 negotiations) to permit Deputy Corporation Counsel time to seek approval for fees from the City Council. *See Id.* Counsel notified the City that a preliminary injunction would be filed on December 28, 2015 if the City did not respond. **Exh. "E"**. The City did not respond until 12:16 a.m. December 28, 2015. *Id.*; **Exh. "H"**, Letter from City.

Accordingly, counsel had completed the Motion for Preliminary Injunction. Holcomb Decl.; **Exh. "G"**. Because the City had answered the Complaint and admitted most (if not all) of the material facts, counsel additionally drafted a Motion

for Judgment on the Pleadings, to which Mr. Roberts was also entitled.  Holcomb Decl.; **Exh. "F"**.  Counsel explained this and the accrual of additional fees and costs due to the City's continued failure to communicate with Mr. Roberts in another letter sent December 28, 2015 in response to the City's December 27 letter.  **Exh. "I"**.

On December 28, 2015, the undersigned also sent the City another draft Settlement Agreement.   Holcomb Decl.   The City responded with its own draft Settlement Agreement later that day.   *Id*.  That same day, counsel sent the City revisions to their draft Settlement Agreement and by December 30, 2015, Mr. Roberts had executed the revised Settlement Agreement.  *Id*.  However, the City did not execute the finalized Settlement Agreement until January 21, 2015 and made further revisions which caused the accrual of even more fees.  Holcomb Decl.; *See* **Exh. "A"**.

Nevertheless, all of the relief requested by Mr. Roberts is included in the Settlement Agreement.  *Compare* **Exh. "A"** *with* [Doc. 1]  On January 25, 2016, the undersigned circulated the Stipulated Dismissal pursuant to the Settlement Agreement.  Holcomb Decl.  Counsel received no response until February 3, 2016.  Holcomb Decl.

## B.  Plaintiff is the prevailing party.

"A typical formulation [of prevailing party status] is that 'plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600-11 (2001) (a "judicially sanctioned change in the legal relationship between the parties" supports a fee award).  Here, Mr. Roberts obtained all of the relief requested in the Complaint, [Doc. 1].  *See* **Exh. "A"**.

Mr. Roberts obtained this relief through a legally enforceable settlement agreement.  **Exh. "A"**.  Thus, Mr. Roberts is the prevailing party:

> Under applicable Ninth Circuit law, a plaintiff "prevails" when he or she enters into a legally enforceable settlement agreement against the defendant:
>
> '[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.' In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

7

*Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (*quoting Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000)).  Indeed, it appears that the City will stipulate that Mr. Roberts is the prevailing party, the sole issue being the amount that constitutes a reasonable award.  **Exh. "A"** ¶ 7.

Moreover, Mr. Roberts prevailed completely, receiving all of the relief he requested in his Complaint.  [Doc. 1]; *See Farrar*, 506 U.S. at 114 (1992) (District Court must compare the extent of success considering relief sought); *McGinnis v. Kentucky Fried Chicken of Cal.,* 51 F.3d 805, 810 (9th Cir.1994)  ("[i]t is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the 'extent of success' and the amount of the fee award.").  Here, through a judicially enforceable settlement agreement:

- the City has rescinded the offending policy, **Exh. "A"**, ¶ 3.1.1; [*compare* Doc. 1, pp. 28, 29 ¶¶ 1, 2];

- Mr. Roberts' permit to acquire rifles and shotguns has been reinstated, **Exh. "A"**, ¶ 3.1.2; [*compare* Doc. 1, p. 29 ¶ 3];

- Mr. Roberts' shotgun has been returned, **Exh. "A"**, ¶ 3.1.3; [*compare* Doc. 1, p. 29 ¶ 3]; and

- Mr. Roberts' permit to acquire the handgun has been issued.  **Exh. "A"** ¶ 3.1.4; [*compare* Doc. 1, p. 29 ¶ 3]

Mr. Roberts deserves a full award of fees and costs.  "*Hensley* emphasized that '[w]here [as here] a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee,' and that 'the fee award should not be reduced

simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'" *City of Riverside v. Rivera*, 477 U.S. 561, 568-69 (1986).

### C  The Lodestar Method justifies the requested fee.

The lodestar method of calculating attorney fees is a two-step process. First, the hours an attorney works is multiplied by the attorney's hourly rate —this process yields the lodestar—and then courts adjust the lodestar up or down "to reflect the characteristics of a given action." *Ferland v. Conrad Credit* Corp., 244 F.3d 1145 (9th Cir. 2001). These fees include all time reasonably and necessarily expended on all phases of the litigation.  *Anderson v.  Director, Office Worker's Compensation Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996).  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley,* 461 U.S. at 433; *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 791-92 (1989).

Here, all time, including the time spent researching and drafting the motions for preliminary injunction and for judgment on the pleadings, was reasonably spent. The City will undoubtedly argue Mr. Roberts should not be allowed to bill for the time spent on such motions because they were not filed.  This argument should be rejected for at least three reasons.

First, Mr. Roberts was under no obligation to avoid the expenditure of this time.   Mr. Roberts could have filed the Motion for Preliminary Injunction contemporaneously with the filing of the Complaint.  Mr. Roberts could have filed his Motion for Judgment on the Pleadings immediately following the filing of the Answer.   However, Mr. Roberts did not do so in an effort to avoid accrual of additional fees.

Second, the City was provided notice that this work would commence and Mr. Roberts practically begged the City to respond to Mr. Roberts' attempts to resolve this matter without expending the time. **Exhs. C-E, I**.  Despite these efforts, the City did not respond.  Holcomb Decl.  Thus, it was plainly reasonable to expend this time.

Third, the work could not have been reasonably avoided.   Without a settlement, a preliminary injunction was necessary in order to restore Mr. Roberts' firearm rights in a timely manner and the Motion for Judgment on the Pleadings was also reasonable because the pleadings plainly show that Mr. Roberts was entitled to judgment. Mr. Roberts repeatedly stopped work when it appeared settlement was possible. *See* Holcomb Decl.; Beck Decl. Had the City wished to settle without bearing the cost of these motions, then it could have and should have responded to Mr. Roberts at the onset of litigation.

This Court addressed an analogous situation and awarded fees for work under similar circumstances:

> The court further agrees that some work on the Motion for Summary Judgment was excessive -- largely because sections were lifted verbatim from the Motion for Preliminary Injunction. The court disagrees, however, with the F&R's determination that further reductions are necessary because the motion for summary judgment could have been avoided. Doc. No. 64, F&R at 18. Based on the court's involvement in settlement negotiations just prior to the scheduled hearing on the Motion for Summary Judgment, the court finds that it was reasonable for Plaintiffs to file the Motion for Summary Judgment -- a binding settlement had not been reached and a favorable determination on the motion for summary judgment would cement Plaintiffs' entitlement to attorneys' fees.

*Hawaii Defense Found. v. City and County of Honolulu,* No. 12-CV-00469 JMS-RLP, 2014 wl 2804448 at *7 (D. Haw. June 16, 2014).  As in *Hawaii Defense Foundation*, Mr. Roberts was reasonable in preparing the preliminary injunction because a binding settlement had not been reached and a favorable determination on the motion for preliminary injunction would have secured Mr. Roberts's rights.  The draft of each memorandum has been provided as **Exhibits "F"** and **"G"** for this Court's review.

## **D.  This Court should award a fair hourly rate.**

This case implicates not only important Second Amendment rights, but also discrimination against lawful permanent residents.  This Court is rarely confronted with such issues particularly where no damages are at stake.[3]   And, unlike many (if not most) of the decisions of this Court, cited below, Mr. Roberts' attorneys neither enjoyed nor expected a contingency fee of any damages award in addition to an awarded fee.

It is the fee applicants' burden to justify the fees, *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).   Counsel has attached three Declarations from other attorneys showing the hourly rates that they charge.  An attorney with comparable experience to Attorney Holcomb charges $395 per hour.  Arensmeyer Decl.; *see* O'Grady Decl. ($350/hr.)  An attorney with less experience than Mr. Holcomb charges $250 per hour.  Brazier Decl.  Yet, the moving attorneys, without any raise in the awarded hourly rate since 2011, have only been awarded a mere $200 or $150 per hour.  Plumbers, with only six years' experience, bill at a

---

[3] With few exceptions, including a few scattered Fourth Amendment cases arising from criminal investigations, the cases in which attorneys' fees are awarded consist primarily of copyright, IDEA or FAPE, various denials of benefits, and employment discrimination or contract cases.  Many of those cases include statutory and actual damages awards.  Thus, those attorneys are likely collecting a contingency fee in addition to the amount rewarded by the Court.

higher hourly rate than the amount the instant attorneys have been awarded.  Hazzard Decl.

This Court has repeatedly acknowledged that awarded rates are below Hawaii's prevailing rates.  "**Not only are Hawaii's prevailing market rates considerably lower than those in California, but *the rates awarded in this district are lower still***."  *Harris v. Trash Man, LLC*, CIV. 12-00169 HG-KSC, 2013 WL 1932715 (D. Haw. Apr. 16, 2013) *adopted*, CIV. 12-00169 HG-KSC, 2013 WL 1932710 (D. Haw. May 7, 2013) (emphasis added); *Onishi v. Redline Recovery Servs., LLC*, CIV. 10-00259, 2010 WL 5128723 at *n. 1 (D. Haw. Nov. 12, 2010) *adopted*, CIV. 10-00259, 2010 WL 5128720 (D. Haw. Dec. 9, 2010) ("**It must be noted that there is a distinction between the prevailing rates in the community, i.e, what one might charge and collect from a client, and the prevailing rates awarded by the Court**," reducing requested rate of $300 per hour to $285 per hour) (emphasis added).

Moreover, this Court notoriously awards fees far below any reasonable rate a comparable attorney would demand on the mainland.  *Nat'l Comm'n for Certification of Crane Operators v. Ventula*, CIV.09-00104SOM-LEK, 2010 WL 2179505 (D. Haw. Apr. 30, 2010) *adopted*, CV09-00104SOM-LEK, 2010 WL 2176098 (D. Haw. May 25, 2010) (prevailing rate in Boise, Idaho too high for Hawaii); *Wereb v. Cnty. Of Maui*, CIV. 09-00198 JMS-LE, 2010 wl 431976 (D. Haw. Feb. 4, 2010) (reducing

Seattle attorney's expected rate of $325 to $260 per hour based on "typical awards"); *Yamada v. Weaver*, CIV. 10-00497 JMS, 2012 WL 6019363 (D. Haw. Aug. 30, 2012) *adopted*, CIV. 10-00497 JMS, 2012 WL 6019121 (D. Haw. Nov. 30, 2012) (requests of specialized Indiana campaign finance attorneys of $400, $350, $300, $200, $150 and $135, $400, and $100 reduced to $300, $250, $225, $150, $125, $300 and $85, respectively).

The reason for these frequent and often drastic reductions of attorneys' requested rates in civil rights cases is the judicially imposed "cap" on senior attorneys' fees in civil rights cases.[4]  The evidence of this "cap" is overwhelming. *See Harris*, *supra.* ("[n]ot only are Hawaii's prevailing market rates considerably lower than those in California *but the rates awarded in this district are lower still*.") (emphasis added); *Olson v. Lui*, CIV. 10-00691 ACK, 2012 WL 3686682 at *4, n. 5 (D. Haw. Aug. 27, 2012) (rejecting civil rights cases "cap" in a non-civil rights case, acknowledging that $350 is the "highest hourly rate" awarded in civil rights cases, and awarding senior attorney $450 despite proof that his normal hourly rate was $675); s*ee Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*, 07-00007 DAEKSC, 2007

---

[4] The "cap" appears unique to civil rights cases.  When one lawyer correctly noted that $965 per hour was approved in Hawaiian Telcom's bankruptcy proceeding, styled *In re Hawaiian Telcom Communications*, *Inc.*, Case No. 08-02005, the Court found that case "neither controlling nor persuasive in this case because of the fundamental differences in bankruptcy litigation and civil rights litigation." *Blake*, *infra.*; *see also Olson, supra.*

WL 2320672 (D. Haw. Aug. 10, 2007) (unpublished) (acknowledging "maximum hourly rate" awarded for "senior attorneys"). This "cap" creates an artificial ceiling on civil rights attorneys' fees from which the rates awarded to less experienced attorneys are calculated.

The cited reasons for these reductions are not based on the economic realities of solo practitioners or other attorneys struggling with the high costs and taxes of Hawaii; and most often not based on the complexity of the case or shoddy workmanship. Instead, most frequently, this Court simply relies on its own "knowledge" of "prevailing" Hawaii attorneys' fees. *Robinson v. Plourde*, 717 F.Supp.2d 1092, 1097-98 (D. Haw. 2010) ("Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court . . ." attorneys' requested $300 per hour reduced to $250 and $275, citing cases finding $200 per hour reasonable for attorney with 31 years' experience in 2008, $285 reasonable for out-of-state attorney with 30 years' experience in 2010, a "prevailing rate in the community of $250 to $285" for attorneys with 20 to 30 years "general litigation" experience in 2008, and $225 reasonable for attorney with 35 years of experience in 2008); *World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1283-84 (D. Haw. 2008) *aff'd in part, World Triathlon Corp. v. Hapai*, 320 F. App'x 778 (9th Cir. 2009) (reduction based on "Court's knowledge of prevailing rates); *Trendex Fabrics, Ltd. v. Chad Jung Kim*, CIV. 13-00253-LEK, 2013 WL 5947027

(D. Haw. Nov. 5, 2013) (reducing attorneys' rates from a requested $250 per hour and $195 per hour to $175 and $125, respectively, based on "the Court's knowledge of the prevailing rates in the community"); *Sam K. v. Dep't of Educ., Hawaii*, CV 12-00355 ACK-BMK, 2013 WL 1856069 (D. Haw. Apr. 30, 2013), *adopted,* CIV. 12-00355 ACK, 2013 WL 3071317 (D. Haw. June 17, 2013) (request of $375 per hour unreasonable and reduced to $275 based on that attorneys' previous award of $275 per hour five years prior, and another attorney having been awarded $300 per hour in similar cases); *I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*, CIV. 11-00676 LEK, 2012 WL 6969333 (D. Haw. Nov. 30, 2012) *adopted,* CIV. 11-00676 LEK, 2013 WL 419016 (D. Haw. Jan. 31, 2013) (attorney requested $290, submitted affidavit stating $300 was reasonable, court awarded $275 because Court "previously deemed" $275 sufficient for attorney); *Dep't of Educ. Hawai"i v. C.B. ex rel. Donna B.*, CIV. 11-00576 SOM, 2012 WL 7475406 (D. Haw. Sept. 28, 2012) *adopted,* CIV. 11-00576 SOM, 2013 WL 704934 (D. Haw. Feb. 26, 2013) (lawyer with 17 years' experience request for $275 reduced to $250, citing 2010 case in which Court found $250 reasonable; first and second year associate requested $200, reduced to $130 because "Court typically awards attorney with similar experience between $120 and $150 per hour"); *Nat'l Comm'n for Certification of Crane Operators v. Ventura*, *supra.* (reducing out-of-state counsel's request for Boise Idaho rates, citing prior reductions from requested $585 per hour and $350 to $285 per

hour, and noting that the requests "exceed the rates awarded to more experienced attorneys in this district"); *Sound v. Koller*, CV 09-00409 JMS-KSC, 2010 WL 1992198 (D. Haw. Mar. 5, 2010), *adopted*, CV 09-00409 JMS/KSC, 2010 WL 1992194 (D. Haw. May 19, 2010) (reducing requests of $350, $225, $585, $175, and $125 to $285, $185, $350, $150, and $120, respectively, based on Court's awareness of prevailing rates);

Yet as demonstrated by the pervasive reductions imposed in the above-cited cases (as well as the Declarations submitted in this case), the awarded rates are artificial and do not reflect the prevailing market rate.  Indeed, this Court has found that its knowledge trumps empirical evidence contradicting the judicially imposed "cap," stating "[a]lthough attorneys are required to provide evidence that the rate charged is reasonable, [citation omitted], this Court is better aware of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys."  *Angel v. Capital Research Grp.*, *Inc.*, CIV 10-00364 HG/KSC, 2012 wl 2563168 (D. Haw. June 28, 2012).  Accordingly, in direct disregard to numerous declarations from lawyers in the community and other evidence, this pervasive "knowledge" of prevailing rates has even served to reduce requested rates that were consistent with the published rates of numerous Honolulu law firms in a well-respected publication relied upon by the legal community.  *Dep't of Educ. Hawai'i v. C.B. ex rel. Donna B.*, *supra.* ("Defendants' counsel submitted a list of the fifty

largest law firms in Honolulu that was published by the *Pacific Business News* on April 27, 2102" and requested rates consistent with those published rates); *Blake v. Nishimura*, CIV 08-00281 LEK, 2010 wl 13724920 (D. Haw. Mar. 31, 2010) (counsel also submitted a similar *Pacific Business News* publication from May 29, 2009) *Black*, *supra*. (2006 *Pacific Business News* list submitted).

Thus, the awarded rates are not based on empirical evidence of the market, but on previously awarded rates that were also reduced by this Court. *Trendex Fabrics*, *supra.* (*citing Au v. The Funding Group, Inc.,* No. CV 11–00541 SOM–KSC, 2013 WL 1187919, at *8 (D.Haw. Mar. 21, 2013)) (adopting finding that $165 is a reasonable hourly rate for an attorney with six years of experience); *Shea v. Kahuku Hous. Found., Inc.,* Civil No. 09–00480 LEK–RLP, 2011 WL 1261150, at *7 (D.Haw. Mar. 31, 2011) (finding that $125 per hour is reasonable for an attorney with three years [sic] experience)"); *I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii, supra.* (reduced because this Court "previously deemed" reduced rate sufficient); *C.Y. ex rel. Cheryl Y. v. Dep't of Educ., Hawai'i*, CIV. 11-00335 JMS, 2011 WL 7102572 (D. Haw. Dec. 29, 2011), *adopted* CIV. 11-00335 JMS, 2012 WL 253147 (D. Haw. Jan. 25, 2012) (finding requested rate reasonable based on prior awards); *B.T. ex rel. M.T. v. Dep't of Educ., Hawai'i*, CIV. 10-00754 JMS, 2011 WL 3021129 (D. Haw. June 27, 2011) *adopted*, CIV. 10-00754 JMS, 2011 WL 3022042 (D. Haw. July 21, 2011) (same); *C.B. ex rel. Donna B.*, *supra.* (lawyer with 17 years'

experience request for $275 reduced to $250 based on 2010 finding that the rate was reasonable for that lawyer).

Counsel recognizes that the Court's systemic reductions in attorneys' rates have exacerbated the determination of a reasonable market rate because attorneys ask for a lesser rate as a result of these reductions. *Tylor v. Smart Enter., Inc.*, CIV. 13-00289 HG-RLP, 2013 WL 6843056 (D. Haw. Dec. 26, 2013) (lawyer requesting $200, which is "'at or below rates customarily charged in the community for similar work by attorneys of similar, experience, ability, and standing in the Honolulu legal community,'" reduced to $150); *Trustees of PAMCAH-UA Local 675 Trust Funds ex rel. Chun v. Ekahi Fire Prot., LLC*, CV 13-00100-HG-RLP, 2013 WL 2897794 (D. Haw. June 12, 2013) (attorney requesting $275 per hour where "customarily charges $325 per hour for his work.");[5] *Trustees of PAMCAH-UA Local 675 Trust Funds v. Am. Indus. Insulation, LLC*, CIV. 10-00412 JMS, 2012 WL 2685083 (D. Haw. June 15, 2012) *adopted*, CIV. 10-00412 JMS, 2012 WL 2685016 (D. Haw. July 5, 2012) (same); *Trustees of the PAMCAH-UA Local 675 Trust Funds v. Drain-N-Rooter Plumbing, Inc.*, CIV. 11-00565 SOM, 2012 WL 1409656 (D. Haw. Apr. 3, 2012) *adopted* CV 11-00565 SOM-RLP, 2012 WL 1409655 (D. Haw. Apr. 23,

---

[5] In this case, other attorneys were awarded a higher rate than the Court would have found "reasonable" (presumably pursuant to the same reasoning Plaintiffs challenge, herein), finding the "blended rate" reasonable.

2012) (same); *Wereb*, *supra*.; *Dep't of Educ. Hawai"i v. C.B. ex rel. Donna B.*, *supra*. (attorney requested $275 per hour, a reduction from his customary $300 per hour rate, and was reduced to $250); *Harris*, *supra*.[6] The Court then relies on these requests as support for its knowledge of the prevailing market rate.[7]

This is flawed reasoning. The attorneys assume the Court will reduce their rate so they request a lower rate. The Court then continues with its longstanding policy of drastic reduction of attorneys' fee requests, and reduces the fee even further, relying on prior reductions. This policy is inconsistent with Section 1988. Hawaii attorneys are no less capable than their mainland counterparts. And, Hawaii citizens deserve representation by attorneys who are just as capable as those of the mainland. These consistently low and even further reduced rates have created an environment where well-intentioned, experienced, and competent counsel are

---

[6] The Court in this particular case did note that the attorney had a "blemished reputation," having been publicly reprimanded.

[7] Counsel notes that several lawyers have, after their requested rates were previously reduced, subsequently requested what this Court awards. However, this does not appear to be a reflection of actual prevailing market rates. Instead, the lawyers appear to have succumbed to the rate reduction and choose not to fight the "rate reduction" battle in each and every case. Moreover, in the overwhelming majority of these cases, the fee applicants' clients had been awarded damages or, at the very least, requested damages. Thus, the attorney enjoyed or expected to enjoy contingency fees in addition to the hourly rate awarded by the Court. Consistent with Section 1988, attorneys should be rewarded for taking cases that do not involve damages but effectuate important social change. Such cases appear few and far between, as one would expect from the "typical awards."

disinclined from representing Hawaii's victims of constitutional violations because they will not be justly compensated for their efforts.  *See* Holcomb Decl.

Perhaps even more persuasive is the fact that the City does not even believe this Court's "typical awards" are reasonable.  *See* Curtis Lum, *Pacific Business News*, "City will spend over $1 million in rail-related attorneys' fees" (May 13, 2011) (attached as **Exh. "P"**).  The City, which obviously employs its own attorneys, hired outside law firms charging $295 to $495 per hour to litigate its rail related cases.  *Id*.  Surely, counsel that is vindicating the rights of law abiding citizens in cohesion with Congressional intent deserves an award of attorneys' fees within the range the City pays its own lawyers.[8]   And, when counsel hires a Honolulu attorney for personal civil matters, counsel is charged $400 per hour. Holcomb Decl.

As further evidence of a fair market rate, counsel also relies on the *Laffey* Matrix, **Exh. "J"**, as evidence of a baseline standard that would reflect the true market value of legal services, albeit in a jurisdiction where all other costs besides

---

[8] The United States Supreme Court has specifically likened civil rights cases in complexity to "antitrust cases" and instructed that civil rights fee awards should "not be reduced because the rights involved may be nonpecuniary in nature." *Blum v. Stenson*, 465 U.S. 886, 893 (1984).  Moreover, any perceived differences in the complexity of this case compared to the "rail" cases are subsumed in the lodestar calculation because attorneys in more complex litigation necessarily bill for more hours. *Id*. At 898-99.

legal services are lower.[9] Notably, the rates awarded in this Court's cases eight to ten years ago, were fairly represented in the *Laffey* Matrix.  Indeed, the rates in 2004-2005 for a lawyer with the undersigned's experience was $270-280 per hour.[10]  Yet, those awards have not risen over time.  A review of current cases shows that the most senior attorneys are generally "capped" at $300 per hour with few exceptions allowing $350 per hour rates.   Yet, had the rates continued to increase, as they have nationally and would in a fair market environment, an attorney with 8-10 years' experience could expect $355 per hour, the rate reflected by the *Laffey* Matrix.[11]

---

[9] This Court has considered the *Laffey* Matrix in at least one other case where out of state attorneys urged its application pursuant to the "narrow" exception to the local forum rule and citing *Prison Legal News v. Schwartznegger*, 608 F.3d 446, 454 (9th Cir. 2010) for the proposition that the *Laffey* Matrix is not a suitable indicator of appropriate fees because it is based on Washington, D.C. rates rather than those of San Francisco.  *Frankl, supra*.  Notably, in that case, state officials were arguing for application of the *Laffey* Matrix *with an added cost-of-living adjustment* to account for the cost of living in San Francisco.  *Prison Legal News*, 608 F.3d at 454.  It is true that the Ninth Circuit found "just because the *Laffey* Matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere," and that the Ninth Circuit has not adopted the *Laffey* Matrix. S*ee Frankl, supra*.  But, it is also true that the Ninth Circuit has not been confronted with a "market" where the cost of living is the second highest in the entire nation, yet the "typical awards" are less than that of Boise, Idaho or Terre Haute, Indiana.

[10] A lawyer with Mr. Beck's experience would have billed $220-225 per hour.

[11] Although counsel has relied on the Department of Justice *Laffey* matrix, the Adjusted Laffey matrix is an accepted benchmark for fee awards in various jurisdictions, accounting for inflation in the "Legal Services Index."  Under that rubric, the fee for an 8-10 year lawyer for this year is $567 per hour; the fee for a 4-7 year lawyer is $393 per hour, and the fee for a 1-3 year lawyer is $320 per hour.  See, http://www.laffeymatrix.com/see.html.  The Third Circuit Court adopted

This Court should also promote the purpose of 42 U.S.C. § 1988 by awarding a rate that is valued similarly to those of other jurisdictions.  Costs of living in Honolulu are higher than anywhere in the nation.  Holcomb Decl.; **Exhs. "K"-"N"**. Although costs are much higher in Honolulu, the value of money in Honolulu is almost identical to the value of money in Washington, D.C.  *See Id*.   This Court is charged with the duty of encouraging attorneys to file cases challenging Hawai'i constitutional violations rather than moving their practices elsewhere.  *See* **Exh. "O"**.  A fair rate would accomplish rather than diminish that goal of 42 U.S.C. § 1988.

Although fair application of other "lodestar" factors (discussed below) demonstrates that counsel deserves a rate higher than that identified in the *Laffey* Matrix, counsel is nonetheless requesting far less than that recommended by the *Laffey* Matrix rate.  Mr. Holcomb requests an hourly rate of $300 and Mr. Beck a rate of $225 per hour.  Plaintiffs rely on the attached Declarations to demonstrate that each attorney's experience and skill levels justify this award.  As shown by the discussion above, the Declarations of other attorneys, the modern cost of living and

---

the Adjusted Laffey Matrix. *Interfaith Community Organization v. Honeywell International, Inc.,* 426 F.3d 694 (3rd Cir. 2005). ("In updating the matrix to account for inflation from 1989-2003, ICO relied on the legal services component of the nationwide Consumer Price Index ("the Legal Services Index"), a measure of inflation in the cost of legal services maintained by the Bureau of Labor Statistics."). http://www.laffeymatrix.com/see.html

doing business in Honolulu, the amount the City pays its outside attorneys, and fair market considerations, counsel believes that the requested rates accurately portray more than reasonable rates for lawyers of comparable skill in Honolulu in cases that are much less novel and risky than the instant case. The constant reduction of requested fee rates represents "towing the line" on attorneys' fees rewards. Section 1988 is not promoted as attorneys are discouraged rather than encouraged to bring cases challenging constitutional violations where no damages are at stake. This Court should award Mr. Holcomb $300 per hour and Mr. Beck $225.

### E.  Counsel deserves a raise.

The requested rates are also reasonable based on prior awards. Hawaii's few civil rights attorneys have also only received only nominal rate increases over the past ten years despite inflation. *Hawaii Disability Rights Center, et. al. v. State of Hawaii*, Civ. No. 03-00524 HG-KSC (D. Haw. 2005); *Doe v. Keala*, 361 F.Supp.2d 1171 (D. Haw. 2005) (attorneys Shelby Floyd and Stanley Levin awarded $275 per hour in 2004). Although inflation necessitates a steady increase in fees even throughout the course of litigating one case, *See Gates v. Deukmijian*, 987 F.2d 1392, 1406 (9th Cir. 1992) (recognizing that rates increase during the course of litigation), even the inevitable reality of inflation and the inevitable increase in experience does not result in regular raises in Hawai'i. *I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*, *supra*. (where attorney requested an increase from $275 to $290 for litigation

spanning two years, this Court found "[i]nflation alone is not sufficient for the requested rate increase" despite counsel's observation that "[w]ithout an adjustment, real compensation would decrease as one's experience increases"). Yet, senior attorneys have been capped by the Court at $300 per hour (with an occasional $350 award), an increase of approximately 9% since 2004. In the meantime and with the exception of the recent budget crisis, federal District Court Judges have received consistent increases in salary to account for inflation, alone, amounting to approximately a 20% increase since 2000.[12]

In 2014 this Court awarded assigned Mr. Beck a rate of $150 an hour and Mr. Holcomb a rate of $200 an hour for work done as early as 2012. *See Hawaii Defense Found. v. City and County of Honolulu,* No. 12-CV-00469 (June. 16. 2014 D. Haw.).[13] In light of the four years that have passed during which time both inflation and experience increased, counsel deserves a raise. <u>Even if the $200 per hour rate were a fair rate for Mr. Holcomb in 2012, which it was not, a mere five percent</u>

---

[12]http://www.uscourts.gov/JudgesAndJudgeships/JudicialCompensation/judicial-salaries-since-1968.aspx.

[13] Despite several awards and counsel's persistent protests as to the inadequacy of the hourly rate, the hourly rate awarded to the instant attorneys has remained stagnate without one single increase. *De-Occupy Honolulu, et. al. v. City and County of Honolulu*, No. 1:12-cv-00668 JMS-KSC, 2015 wl 1013834 (D. Haw. March 9, 2015); *James v. City and County of Honolulu*, 1:13-cv-00397 JMS-BMK (D. Haw. Feb. 3, 2015); *Hawaii Defense Foundation, et. al. v. City and County of Honolulu, et. al.*, 1:12-cv-00469 JMS-RLP, 2014 wl 2804448 (D. Haw. June 19, 2014)

annual increase in awarded rates over a four year period would result in Mr. Holcomb's hourly rate increasing to $243.10.  Similarly, Mr. Beck's awarded rate would increase to $182.33.[14]  The awarded rates were not reasonable in 2012.  And, even if they were, counsel deserves a meaningful raise not only because of inflation but also because of the continued accrual of skill and experience.

## F.  The *Johnson/Kerr* Factors Supports the Requested Rate

The 9th Circuit generally requires district courts to use the 12 factors outlined in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975) to make attorneys' fee determinations.[15]   Of these factors, the following support at least the requested hourly rate, if not a positive adjustment to the base attorney fee requested.

---

[14] In 2013, this Court found that $165 is a reasonable rate for an attorney, like Mr. Beck, with six years' experience. *See Au v. The Funding Group, Inc.*, 2013 WL 1187919, at *8 (D. Haw. Mar. 21, 2013).  A 5% annual increase of this awarded rate would result in Mr. Beck receiving approximately $182 per hour.

In 2011, this Court found that $210 was a reasonable hourly rate for an attorney with ten years' experience. *See Millon v. Hawaii*, 2011 WL 744900, at *6 (D. Haw. Feb. 22, 2011).  Mr. Holcomb has eleven years' experience.  Nevertheless, a mere 5% increase annually from 2011 would result in an hourly rate of approximately $268.

[15] The Ninth Circuit requires consideration of some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988). The Kerr factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee;  (6) whether the fee is fixed or contingent;  (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

a.  <u>The novelty and difficulty of the questions involved</u>

The legal complexity of this case is unique, both for the attorneys involved and in terms of the relief obtained.  In large part, this case revolved around Second Amendment litigation which is a rapidly developing in light of the Supreme Court decisions in *District of Columbia v. Heller*, 554 U.S. 57 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010).  The application of these cases and the level of scrutiny to be applied to firearms statutes throughout the country  is still  developing.  This factor supports an award of the requested fee.

b.  <u>Whether the fee is fixed or contingent</u>

Here, Mr. Roberts is represented *pro bono*.  Only if Mr. Roberts received the requested non-monetary relief could Mr. Roberts' counsel expect to recover any money at all.  *See* Beck Decl.; Holcomb Decl.  Unlike most cases dealing with a fee shifting statute, Mr. Roberts' counsel enjoy no payment from their client. Being that any potential contingency fee for a damages award is non-existent in this case, this factor should support Mr. Roberts' counsel's requested fee.   This factor directly promotes the policy of 42 U.S.C. §§ 1983 and/or 1988, which is to ensure representation of persons who otherwise could not afford counsel.

---

attorney s; (10) the "undesirability " of the case; (11) the nature and length of the professional  relations hip  with  the  client;  and (12) awards in similar cases. *Id.* at 539 n .1.

c. Experience of counsel

    Mr. Roberts' counsel are the most experienced attorneys in Hawai'i as to Second Amendment litigation. Mr. Holcomb has participated in two other Second Amendment cases before this Court. *See* Holcomb Decl. Mr. Beck has participated in four other Second Amendment cases before or on appeal from this Court. *See* Beck Decl. Additionally, Mr. Beck has litigated several other Second Amendment cases in other districts.[16] Second Amendment law is a fairly new area of law so this amount of experience is rare. Experience that was necessary in order to litigate this matter. This prong supports adjusting Counsel's rate upwards.

d. Undesirability of the case

    Firearms litigation is a highly contentious issue in this country. Being associated with firearms cases brings a stigma that can detract from other aspects of an attorney's practice. Counsel has shouldered that burden in order to advocate for Mr. Roberts. Accordingly, this factor should be used to adjust counsel's fee upward.

    Mr. Holcomb deserves $300 per hour and Mr. Beck deserves $225 per hour.

---

[16] Mr. Beck has served as counsel in the following cases: *United States v. One Palmetto State Amory PA-15 Machinegun,* No. 15-2202, 2015 U.S. Dist. LEXIS 95302 (E.D. Penn. 2015) (challenge to federal machine gun ban). (on appeal), and *Hollis v. Lynch,* No. 3:14-CV-03872-M, 2015 U.S. Dist. LEXIS 103656 (N.D. Tex. 2015) (challenge to federal machine gun ban) (on appeal) and *Lycurgan Inc. v. Jones* 3:14-cv-00548-JLS-BGS (administrative law case with a Second Amendment component). Beck Decl.

### G.  Costs

Mr. Roberts requests reimbursement of costs which consist of the $400 filing fee, $28.05 for courtesy copies of the Complaint, $23.05 for copies of the Complaint and other documents necessary to effectuate service, and $117.30 for courtesy copies of the instant document.  These costs were both reasonable and necessary.  28 U.S.C. § 1914(a) (mandating a $350 filing fee); District Court Miscellaneous Fee Schedule ¶ 14 ($50 administrative fee); Fed.R.Civ.P., Rule 4 (requiring service of a copy of the Complaint and summons); LR 7.7 (mandating 2 "courtesy" copies be provided to the Court).[17] Mr. Roberts is entitled to these costs:

> Under § 1988, Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client." Thus reasonable expenses, though greater than taxable costs, may be proper. Harris' response indicated the questioned items were necessary and reasonable in this case.

*Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (internal citations omitted). The requested costs are taxable costs.  28 U.S.C. § 1920 ((1) fees of the clerk; and (4) copying costs where the copies are necessarily obtained for use in the case.). And, insofar as the costs are not taxable pursuant to statute, the costs should nevertheless be awarded.  Fed.R.Civ.P., Rule 54(d)(1) ("costs … should be allowed to the prevailing party.").

---

[17] Additional copies were made for counsel's file and/or to provide to Mr. Roberts.

## H.  CONCLUSION

Mr. Roberts has established that he is the prevailing party and thus entitled to costs and fees. Mr. Roberts has requested a reasonable hourly rate for his attorneys that is consistent with the prevailing market rate established above.  The hours spent litigating this case are also reasonable.  The costs for which Mr. Roberts requests reimbursement were both necessary and reasonable.  Mr. Roberts also requests that counsel be awarded the general excise (4.712%) tax as to the fees award. *Donkerbrook v. Title Guar. Escrow Servs., Inc.*,  Civ No. 10–00616 LEK–RLP, 2011 WL 3649539, at *9–10 (D. Haw. Aug.18, 2011).

Accordingly, Mr. Roberts requests an award from this Court of:  $22,157.50 in fees for Mr. Holcomb and $1044.06 for the GET tax; $15,682.50 in fees for Mr. Beck and $738.96 for the GET tax; and $568.40 in costs.  The total amount requested is $40,191.42.  Mr. Roberts will request additional fees and costs should a reply, objections, and/or an appeal become necessary.

DATED:  Honolulu, Hawaii; February 4, 2016.

*s/Richard L. Holcomb*
Richard L. Holcomb
Attorney for Plaintiff
